**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MARCELO DE MIRANDA LOPES et al., | |
|     Plaintiffs, | CIVIL ACTION NO. |
| | 3:16-cv-1627 (JCH) |
|     v. | |
| | |
| WEBSTER BANK, N.A., | APRIL 17, 2018 |
|     Defendant. | |

### RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 32)

The plaintiffs, Marcelo de Miranda Lopes ("Lopes") and American Trade and Investment Services Corporation ("American"), bring this breach of contract and unjust enrichment action against the defendant, Webster Bank, N.A. ("Webster Bank"). See Complaint ("Compl.") (Doc. No. 1). Count One of the Complaint alleges that Webster Bank breached a contractual agreement with Lopes and American when it placed a hold on an American deposit account for 45 days. See id. at ¶¶ 10–38. Count Two alleges that, as a result of this breach of contract, Webster Bank was unjustly enriched. See id. at ¶¶ 39–41. The plaintiffs allege that the 45-day hold caused American to go out of business and Lopes to suffer financial loss and damage to his reputation, and request money damages in the amount of $10,200,000. See Compl. at 7.

Webster Bank now moves for summary judgment. See generally Motion for Summary Judgment ("Def.'s Mot.") (Doc. No. 32). In support of its Motion, Webster Bank argues that the contractual agreement between the parties allowed them to place a 45-day hold on the deposit account and, therefore, the hold was not a breach of contract. Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 34) at 19–23. Webster Bank further argues that the plaintiffs have no evidence that it derived any benefit from the 45-day hold and have, therefore, failed to

create a genuine dispute of fact with respect to the unjust enrichment claim.[1] Id. at 23–25.

For the reasons that follow, Webster Bank's Motion for Summary Judgment (Doc. No. 32) is granted.

## I. FACTS

The facts in this case are largely undisputed. Lopes is a resident of Brazil and the sole owner of American. See Defendant's Rule 56(a)(1) Statement of Facts ("Defendant's Statement") (Doc. No. 33) at ¶ 4; Plaintiffs' Reply to Defendant's Statement of Facts ("Plaintiffs' Statement") (Doc. No. 37) at ¶ 4. At all relevant times, Attorney Daniel Greenberg had an attorney/client relationship with Lopes and represented several U.S.-based companies on Lopes's behalf, including American. See Affidavit of Attorney Greenberg ("Greenberg Aff.") (Doc. No. 40-11) at ¶¶ 7, 11, 15. In 2011, Attorney Greenberg communicated with Webster Bank about opening a business account for American, primarily through Calista Cafora ("Cafora"), Assistant Manager of the Webster Bank branch in Monroe, Connecticut. See id. at ¶¶ 13–17. Webster Bank asserts that the account was opened on July 22, 2011, see Defendant's Statement at ¶¶ 1–2, 10, while the plaintiffs assert that the account was opened on July 27, 2011, see Plaintiffs' Statement at ¶¶ 1–2, 10. Webster Bank asserts that it is Webster Bank's policy and practice to provide a document entitled Deposit Account Disclosures for Business Accounts ("Deposit Account Disclosures") to all business account customers

---

[1] In its Memorandum, Webster Bank also makes several arguments in anticipation of a claim that Webster Bank breached an oral contract with the plaintiffs. See Def.'s Mem. at 8–19. However, because the plaintiffs have not asserted breach of oral contract claims and do not argue breach of oral contract in their Response to the Motion for Summary Judgment, the court does not address those arguments in this Ruling. See generally Memorandum in Opposition to Motion for Summary Judgment (Doc. No. 39) at 7–16.

before they open an account, which document contains contract terms to which account owners are bound.  <u>See</u> Defendant's Statement at ¶¶ 13–14; Exh. 3, Defendant's Statement ("Deposit Account Disclosures") (Doc. No. 33-3) at 17–52.  The plaintiffs emphatically deny ever receiving such a document.  <u>See</u> Plaintiff's Statement at ¶¶ 13–14.  In pertinent part, "Deposit Account Disclosures for Business Accounts"[2] provides as follows:

> **Right to Refuse Any Deposit, to Close Any Account, or to Terminate Account Services.**  We reserve the right to refuse to accept your deposit, including a new account deposit, and to close your Account at any time, without notice, if we have sustained a loss or reasonably believe that we will be exposed to risk or loss, or for other lawful reasons. . . .  We also reserve the right to refuse to offer any account service . . . or to terminate or freeze any of your Account services at any time. . . .

> We reserve the right to freeze or hold your Account in the event of a dispute concerning the Account, or if we reasonably believe that we may be exposed to loss or risk if your Account is not frozen or held. . . .  The hold may remain in place until dispute resolution, or until we are otherwise assured that we are not at risk by releasing the hold.

> . . . .

> **YOUR ABILITY TO WITHDRAW FUNDS**

> . . . .  When you make a deposit, the availability of funds may be delayed in accordance with funds availability laws ("Hold Period").  During the Hold Period, you may not withdraw these funds in cash, and we are not required to use the funds to pay

---

[2] The court notes that, as the plaintiffs emphasize, the edition of the Deposit Account Disclosures that the defendants attach as an exhibit to their Statement of Facts is date-stamped September 2011 and, therefore, was likely not in print at the time the account was opened in July 2011.  <u>See</u> Pl.'s Mem. at 5, 11, 15–16.  The plaintiffs received both the September 2011 edition as well as a July 2010 edition in the course of discovery, and attach the July 2010 edition to their Statement of Facts.  <u>See</u> Exh. 9, Plaintiffs' Statement (Doc. No. 40-9).  Upon review of the two documents, the court has identified no differences in the language quoted herein or relied upon by Webster Bank, nor have the plaintiffs identified any difference, or even suggested that such a difference exists.  For the sake of efficiency, the court will cite to the Deposit Account Disclosures document attached to the Defendant's Statement, but notes that the relevant language in the two editions is identical.

checks drawn on your Account that have been presented for payment.  If you need immediate availability from a deposit, please ask us when the funds will be available for withdrawal.

Not all checks will clear during the applicable Hold Period. You are responsible for returned items that have been credited to and withdrawn from your Account.

. . . .

Please Note: Funds That You Deposit By Check May Be Delayed For A Longer Period Under the Following Circumstances:

- We reasonably believe that a check you deposit will not be paid;

- You deposit checks totaling more than $5,000 on any one (1) day[.]

Deposit Account Disclosures at 7–8, 22.

It is undisputed that, on July 26, 2011, Cafora sent an email to one of Greenberg's employees.  In pertinent part, that email responded to the question, "[C]an you tell us what the cycle time will be for the money to be available?" as follows:

With checks deposited it will be 1 business day for local checks and 2 business days for non local (this is all based on our funds availability which goes off of the first 4 numbers of the routing number) It is in our disclosures, if you would like another I can give it to Daniel [Greenberg] when he stops by today just let me know.

Exh. 11, Defendant's Statement (Doc. No. 33-11) at 11.

It is undisputed that, on July 27, 2011, several checks were deposited in American's Webster Bank account, totaling $18,186.71.  See Defendant's Statement at ¶ 18; Plaintiffs' Statement at ¶ 18.  It is further undisputed that, on August 2, 2011, Webster Bank debited American's Webster Bank account $7,533.25 because a check was returned.  See Defendant's Statement at ¶ 19; Plaintiffs' Statement at ¶ 19.

4

Thereafter, Webster Bank placed a hold on American's Webster Bank account that remained in effect until September 15, 2011.  See Defendant's Statement at ¶ 22; Plaintiff's Statement at ¶ 22.  Webster Bank asserts that the hold was placed on the account because "in American's very first deposit . . . the single largest item that was deposited . . . was returned immediately."  Def.'s Mem. at 22; see Defendant's Statement at ¶ 18; Plaintiffs' Statement at ¶ 18.  On September 15, 2011, all the funds in the account were made available to American; Webster Bank did not withhold any portion of the funds for fees or other expenses.  See Defendant's Statement at ¶ 23; Plaintiff's Statement at ¶ 23.

## II.     LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016).  Once the moving party has met its burden, in order to defeat the motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics

Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995). "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted." F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)). On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

## III.  DISCUSSION

In their Complaint, the plaintiffs allege two claims against Webster Bank: (1) a breach of contract claim (Count One), see Complaint at ¶¶ 10–38; and (2) an unjust enrichment claim (Count two), see id. at ¶¶ 39–41. Webster Bank argues that the written contract between the parties permitted it to place a 45-day hold on the account in question, that Webster Bank was not enriched by the 45-day hold, and that all the damages requested by the plaintiffs are barred by the written contract. See generally Def.'s Mem.; Defendant's Reply to Plaintiff's Memorandum ("Def.'s Reply") (Doc. No. 41).

### A.  Breach of Contract (Count One)

Whether Webster Bank breached a contract is, of course, dependent on the terms of the contract between the parties. In Connecticut, the meaning of a contract is a question of law to be determined by the court if the contractual language is "plain and unambiguous." Cruz v. Visual Perceptions, LLC, 311 Conn. 93, 101 (2014). "It is implicit in this rule that the determination as to whether contractual language is plain and unambiguous is itself a question of law." Id. at 101–02. As the parties note,

6

contracts between banks and depositors are created when an account is opened and a deposit is made. See Def.'s Mem. at 19; Pl.'s Mem. at 14–15. "The deposit agreement, if any, signature card, and checks drawn against an account are the contract documents between a bank and its customer." Saint Bernard Sch. of Montville, Inc. v. Bank of Am., 312 Conn. 811, 831 (2014); see Def.'s Mem. at 19; Pl.'s Mem. at 14–15.

As a threshold matter, the court notes that the parties dispute whether certain forms, one entitled "Business Account Application/Resolution with Account and Online Services" ("Business Account Application") and the other entitled "Deposit Account Signature Form," were submitted to Webster Bank on July 22 or July 27, 2011. Webster Bank asserts that these forms were submitted on July 22, 2011, see Defendant's Statement at ¶¶ 1–2, 10, while the plaintiffs assert that they were submitted on July 27, 2011, see Plaintiffs' Statement at ¶¶ 1–2, 10. The forms themselves are dated July 22, 2011, and contain the signatures of both Lopes and Attorney Greenberg. See Exh. 2, Defendant's Statement ("Business Account Application") (Doc. No. 33–2); Exh. 4, Defendant's Statement ("Signature Form") (Doc. No. 33-4). Attorney Greenberg and Lopes do not dispute the authenticity of the signatures. See Exh. 1, Defendant's Statement (Doc. No. 33-1) at 49–52 (deposition of Attorney Greenberg); Exh. 6, Defendant's Statement (Doc. No. 33-6) at 61 (deposition of Lopes). Instead, the plaintiffs assert that Cafora filled in the date fields herself before providing the forms to Attorney Greenberg on July 22, 2011, and that the forms were not submitted to Webster Bank until five days later. See Plaintiff's Statement at ¶¶ 1–2; Greenberg Aff. at ¶¶ 20–23; Exh. 13, Plaintiff's Statement ("Lopes Aff.") (Doc. No. 40-13) at ¶¶ 15–18.

Arguably, whether Lopes and Attorney Greenberg signed the forms on July 22 or

7

July 27, they should be bound to the July 22 date because, by signing a form dated July 22, they implicitly agreed to that date.  <u>See</u> <u>Delk v. Go Vertical, Inc.</u>, 303 F. Supp. 2d 94, 99 (D. Conn. 2004) ("In Connecticut, 'the general rule is that where a person of mature years and who can read and write signs or accepts a formal written contract affecting his pecuniary interests, it is his duty to read it and notice of its contents will be imputed to him if he negligently fails to do so.'" (quoting <u>Dimaggio v. Labreque</u>, No. CV000438800S, 2003 WL 22480968, at *3 (Conn. Super. Oct. 9, 2003))).  On the other hand, at the summary judgment stage, the court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  <u>LaFond</u>, 50 F.3d at 175.  Furthermore, as noted above, a contract for a bank account is typically initiated with a deposit, and it is undisputed that the first deposit was made by American into the Webster Bank account on July 27, 2011.  <u>See</u> <u>St. Bernard Sch. of Montville, Inc.</u>, 312 Conn. at 831 ("The bank deposit creates a valid contract by which the bank is obligated to repay the funds subject to its rules and applicable statutes.");  Defendant's Statement at ¶ 18; Plaintiff's Statement at ¶ 18.  Therefore, for the purposes of this Motion, the court credits the plaintiffs' assertion that the Signature Form and Business Account Application were signed and submitted on July 27, 2011.

Webster Bank argues that it is entitled to summary judgment on the breach of contract claim because the written contract between the parties included the Deposit Account Disclosures, which explicitly permit Webster Bank to take the action at issue here, namely placing a 45-day hold on an account.  <u>See</u> Def.'s Mem. at 19–23. Although the plaintiffs' Memorandum is somewhat muddled, the plaintiffs do not appear to dispute Webster Bank's contention that the Deposit Account Disclosures allow

Webster Bank to place a 45-day hold on an account.  Instead, they appear to raise two arguments: (1) that the Deposit Account Disclosures were not incorporated into the written contract between the parties, Pl.'s Mem. at 13–16; and (2) that there is a genuine dispute of material fact as to whether the terms of the Deposit Account Disclosures should be given effect in light of Cafora's email, <u>id.</u>

Although the parties dispute whether the Deposit Account Disclosures were incorporated into the written contract between the parties, there is no dispute that the Business Account Application and the Signature Form are both part of the written contract.  <u>See</u> Def.'s Mem. at 13–14 ("The signatures required on the account forms took several days to garner and the documents were not returned to the Bank until the initial deposit was made on July 27, 2011. . . .  [T]he written contract and contractual relationship was established once all of the required forms were fully executed and submitted along with the initial deposit to the Bank . . . .").

The Connecticut Supreme Court has held that, if a document is incorporated by reference in a contract, such incorporation by reference "produces a single contract which includes the contents of the incorporated papers."  <u>Randolph Constr. Co. v. Kings East Corp.</u>, 165 Conn. 269, 275 (1973); <u>see</u> <u>Bernhard-Thomas Bldg. Sys., LLC v. Weitz Co., LLC</u>, No. 3:04-CV-1317 (CFD), 2011 WL 5222682, at *2 (D. Conn. Oct. 31, 2011).  "The documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires."  <u>Randolph Constr. Co.</u>, 165 Conn. at 275.

Given the agreement of the parties that the Business Account Application and the Signature Form were part of the written contract, and in light of the Connecticut law on incorporation of documents, the question for the court is whether the Business

Account Application or the Signature Form "plain[ly] and unambiguous[ly]" incorporate the Deposit Account Disclosures. The court concludes that they do. For example, page one of the Business Account Application contains the following language:

> All funds in the Customer's accounts shall be subject to the bylaws, rules, account agreements, service agreements, <u>account disclosures for business accounts</u>, online terms and conditions, terms of use, terms of service, regulations, policies and procedures of the Bank governing deposits now in effect or hereafter adopted or amended by the Bank.

Business Account Application at 1 (emphasis added). In addition, on page two of the Business Account Application, directly above the signature fields, the Business Account Application states, "Under penalties of perjury, I the undersigned Authorized Signer of the Account, certify that [b]y signing below, I/we also acknowledge receipt of the 'Deposit Account Disclosures for Business Accounts." <u>Id.</u> at 2. Furthermore, the Signature Form, which both Lopes and Attorney Greenberg signed, also incorporates the Deposit Account Disclosures. The very first line of the Signature Form states, "By signing below I/we acknowledge receipt of the Deposit Account Disclosure Information Booklet, the Fee Schedule and the Interest Rate Schedule." Signature Form. The court concludes that these references are sufficient to incorporate the terms of the Deposit Account Disclosures into the written contract between the parties plainly and unambiguously and, therefore, as a matter of law.

The plaintiffs argue that summary judgment is not proper because "[t]here is a clear question of fact . . . as to whether the Deposit Account Disclosures [booklet] . . . was given to American." Pl.'s Mem. at 16. In support of this argument, the plaintiffs submit affidavits signed by Attorney Greenberg and Lopes, which state that Webster Bank did not provide them with a copy of the Deposit Account Disclosures. <u>See</u>

10

Greenberg Aff. at ¶ 30; Lopes Aff. at ¶¶ 22–23.

However, even crediting the plaintiffs' assertions that they did not receive the Deposit Account Disclosures, that dispute of fact is not material because, pursuant to Connecticut contract law, a document that has been incorporated in a contract is binding on the parties to that contract even if the incorporated document was not provided. In 566 New Park Associates, LLC v. Blardo, the Appellate Court of Connecticut considered and rejected the same argument that the plaintiffs raise in this case:

> The defendants argue that A205 was never given to them and, therefore, they could not have intended to incorporate it into the contract. The contract was clear that A205 was being incorporated by reference. It was the defendants' responsibility, therefore, to become familiar with all the terms of the contract, including terms incorporated by reference. Consequently, the defendants are precluded from now arguing that these terms are not part of the contract on the ground that they did not read all of the terms of the contract before assenting to it.

97 Conn. App. 803, 811 n.5 (2006); see also Delk, 303 F. Supp. 2d at 99 (discussing Connecticut's duty to read). Given the Connecticut rule that parties to a contract are obligated to familiarize themselves with incorporated documents whether those documents are provided or not, it is not material to their breach of contract claim whether the incorporated Deposit Account Disclosures were actually provided to the plaintiffs.

The rule that parties to a contract are bound by incorporated documents whether or not those documents were provided is not a rebuttable presumption like, for example, the "mailbox rule." See Yesh Music, LLC v. Amazon.com, Inc., 249 F. Supp. 3d 645, 658 (E.D.N.Y. 2017) ("Under the mailbox rule, where, as here, there is proof of an office

procedure that is followed in the regular course of business, and these procedures establish that letters or notices have been properly addressed and mailed, a rebuttable presumption arises that the letter or notice was actually received by the person to whom it was addressed.").  Instead, the rule that incorporated documents are binding whether or not they were received is part of the duty to read: a person who signs a contract is obligated to read the terms of the contract, including seeking out incorporated documents if they are not provided.  See 566 New Park Associates, LLC, 97 Conn. App. at 811 n.5; Batter Bldg. Materials Co. v. Kirschner, 142 Conn. 1, 7 (1954) ("A party [is not] allowed, in the absence of accident, fraud, or mistake or unfair dealing, to escape his contractual obligations by saying . . . that he did not read what was expressly incorporated as specific provisions of the contract into which he entered.").  Because the court has concluded that the Deposit Account Disclosures were plainly incorporated by reference in two of the documents that form their written contract, the plaintiffs were obligated to learn the contents of the Deposit Account Disclosures and the terms of that document were incorporated into the forms they admit they signed.  See, e.g., Greenberg Aff. at ¶ 26.

The only evidence the plaintiffs have to support their argument that the parties had entered into a written contract requiring Webster Bank to make funds from non-local checks available within two business days is the email sent from Cafora to an employee of Attorney Greenberg on July 26, 2011.  See supra Section I; Pl.'s Mem. at 11–14.  Webster Bank argues that this email is not evidence of an unequivocal promise to make non-local funds available within two business days, but rather a general description of the timeline for funds availability qualified by a reference to "our

disclosures," which Webster Bank asserts refers to the Deposit Account Disclosures. See Def.'s Mem. at 18. The plaintiffs argue that Cafora's reference to "our disclosures" could have been a reference to several other forms, including a document entitled Webster Bank—Important Changes to your Webster Business Account(s) (the "Important Changes" document), the Signature Form, or the Business Account Application.

In support of Webster Bank's argument that Cafora was referring to the Deposit Account Disclosures, the court notes that it is the only document submitted by either party that has the word "disclosures" in the title. Furthermore, all three of the documents that the plaintiffs suggest could have been what Cafora was referencing cross-reference to the Deposit Account Disclosures. For example, the Important Changes document—which is the only one of the three that expressly discusses funds availability—states, at the top of the first page:

> Improved Funds Availability
>
> Beginning July 21, 2011, Webster will make the first $200 of a day's deposit of checks drawn on banks outside of CT, MA, RI and the NY metropolitan area available on the next business day after the day of the deposit. The remainder of such funds will continue to be made available on the second business day after the day of the deposit.
>
> For more detailed information about funds availability, please see your deposit disclosures entitled "Your Ability to Withdraw Funds."

Exh. 15, Plaintiff's Statement (Doc. No. 40-15) at 2 (emphasis added). Therefore, the Important Changes document plainly and prominently directs customers to a different document, "your deposit disclosures," for more information about funds availability. A review of any of the three forms to which the plaintiffs refer would have put them on

notice that a different document existed—one which, according to Cafora, contained information about funds availability.

However, even construing Cafora's email as an unqualified promise by Webster Bank that non-local funds would be available for withdrawal within two days under any circumstances, there is a more fundamental problem with the plaintiffs' reliance on the email: it is parol evidence. The Connecticut Supreme Court has described the parol evidence rule as follows:

> The rule is premised upon the idea that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages . . . in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme.

Weiss v. Smulders, 313 Conn. 227, 248 (2014) (internal quotations and citations omitted). Parol evidence may be relevant to the meaning of a contract "to explain an ambiguity appearing in the instrument." Cruz, 311 Conn. at 106 (quoting Schilberg Integrated Metals Corp. v. Cont'l Cas. Co., 263 Conn. 245, 277 (2003). However, "[w]hen contractual language is plain and unambiguous," the contract itself controls. Id.; see Schilberg Integrated Metals Corp., 263 Conn. at 277 ("The parol evidence rule does not . . . forbid the presentation of parol evidence, that is, evidence outside the four corners of the contract . . . but forbids only the use of such evidence to vary or contradict the terms of such a contract."); Int'l Klafter Co., Inc. v. Cont'l Cas. Co., Inc., 869 F.2d 96, 100 (2d Cir. 1989) ("It is a fundamental principle of contract interpretation that, in the absence of ambiguity, the intent of the parties must be determined from their

final writing and no parol evidence or extrinsic evidence is admissible."); Yesh Music, LLC, 249 F. Supp. 3d at 658 ("Plaintiffs cannot use extrinsic evidence, such as the email chain between them and a representative of TuneCore, to support their interpretation of TuneCore's Terms and Conditions.").

The plaintiffs assert that, in her email, Cafora "represented and contractually agreed to make the funds deposited into its account by checks available for American to withdraw within two (2) business days." Pl.'s Mem. at 2. However, Cafora's email is not a "contractual[ ] agree[ment]." Id.; cf. Rubinstein v. Clark & Green, Inc., 395 Fed. App'x 786, 788 (2d Cir. 2010) ("While an exchange of emails may constitute a binding contract under New York law, that is not the case 'where the parties contemplate further negotiations and the execution of a formal instrument.'" (internal citation omitted) (quoting Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc., 145 F.3d 543, 547 (2d Cir. 1998))). Taking as true the plaintiffs' assertion that the Business Account Application, the Signature Form, and the deposit itself were all submitted on July 27, 2011, the court concludes that email correspondence that took place on July 26, 2011, constitutes precontractual representations which do not modify the terms of the written contract. See Channing Real Estate, LLC v. Gates, 326 Conn. 123, 135–36 (2017) (holding letter was barred by parol evidence rule where it constituted "precontractual representations" and defendant had not argued that letter was a "postcontractual modification" of the contract at issue). The plaintiffs have provided no argument or authority to support their bald assertion that Cafora's email created a binding contract between the parties, and the court knows of none.

Finally, the plaintiffs direct the court to a provision of the Business Account

Application form, which provides as follows:

> RESOLVED, that all checks, drafts and other orders for the payment of money drawn against such accounts shall be signed by or initiated by any one of the Authorized Signers. And that the Bank is hereby directed to accept and pay or otherwise honor without further inquiry any check, draft or other order for the payment of money against such accounts for whatever purpose and to whomever payable when made, signed, excepted or endorsed by anyone of the named Authorized Signers, or any person from time to time holding or claiming to hold any of the offices of the Customer indicated in the attached "Authorized Signer Form," even if such checks, drafts, or other orders for payment of money create or increase an overdraft of such account, although the payment or non payment of such overdraft is to be at the option of the Bank.

<u>See</u> Business Account Application at 2; Pl.'s Mem. at 15. The plaintiffs argue that this provision "sets forth terms and conditions to be relied upon and adhered to by the Bank and American" and "it is undisputed that the Bank provided the aforementioned form to American." Pl.'s Mem. at 14–15.

The plaintiffs do not, however, explain why this provision is helpful to their argument that Webster Bank was contractually bound to make funds availability within two business days. Rather than contradicting the language related to holds and freezes in the Deposit Account Disclosures, the court construes this passage to be discussing the authorization of certain signers. It does not, for example, discuss a timeframe for availability of funds, or otherwise divest Webster Bank of any right to hold funds. Furthermore, the resolution immediately preceding the quoted language relates to the "true and accurate signatures" on the form and the passage immediately following places "full responsibility of the use of actual or printed facsimile signature(s) on checks, drafts or orders" on the customer. Business Account Application at 2. In short, taken in context, it is clear that this provision governs the signatures accepted by Webster Bank

16

for the account in question.  It does not govern Webster Bank's ability to place holds or freezes on customer accounts, much less contradict the terms of the Deposit Account Disclosures.

In reaching the conclusion that the Deposit Account Disclosures were incorporated into the written contract between the parties and binding on the plaintiffs even if they were not provided to them, the court notes that the documents that the plaintiffs acknowledge receiving are one to three pages in length and the references to the Deposit Account Disclosures are prominent.  <u>See</u> Business Account Application; Signature Form; Exh. 15, Plaintiff's Exhibits (Important Changes document).  There is also no contention that either Lopes, an experienced entrepreneur with multiple U.S.-based companies, or Attorney Greenberg, a licensed practitioner of law and a U.S. resident, lack the capacity to read or understand the contract terms at issue.  <u>See</u> Defendant's Statement at ¶¶ 7–8; Plaintiff's Statement at ¶¶ 7–8.  Furthermore, the plaintiffs do not argue that the terms in the Deposit Account Disclosures are unenforceable; they assert only that they did not receive that document and, therefore, should not be bound by it.  In light of the Connecticut Appellate Court's conclusion to the contrary, the court knows of no reason why the Deposit Account Disclosures should not bar the breach of contract claim in this case.

In sum, the court concludes that the plaintiffs have failed to establish a genuine dispute of material fact with respect to their breach of contract claim.  In light of the court's conclusion that the written contract between the parties unambiguously gave Webster Bank the right to take the action alleged here—namely, placing a 45-day hold on American's account—Webster Bank's Motion for Summary Judgment is granted with

respect to the breach of contract claim.

B.     Unjust Enrichment (Count Two)

In their Complaint, the plaintiffs allege that Webster Bank was unjustly enriched by the 45-day hold Webster Bank placed on American's account.  See Compl. at ¶¶ 39–41 ("Webster has been unjustly enriched by its retention and use of the deposited funds at the expense of the plaintiffs.").  In Connecticut, a party seeking recovery on an unjust enrichment theory must prove the following three elements: "(1) that the defendant[ ] [was] benefited, (2) that the defendant[ ] unjustly did not pay the plaintiffs for the benefits, and (3) that the failure to payment was to the plaintiffs' detriment."  Schirmer v. Souza, 126 Conn. App. 759, 763 (2011).

Webster Bank asserts that the plaintiffs have no evidence to support the first prong, namely that the plaintiffs "have failed to point to anything of value that the Bank gained at all."  Def.'s Mem. at 24.  The plaintiffs argue that Webster Bank enjoyed the "unfettered use of American's deposited funds" for the 45 days during which the account was frozen, which Webster Bank could use "to foster Bank business and increase revenues and profits such as but not limited to by making loans for interest to Bank Customers."  Pl.'s Mem. at 18.  In response, Webster Bank notes that the plaintiffs "have produced no evidence that the defendant used the account funds to make loans to other customers, or otherwise use [sic] those moneys to earn a profit."  Def.'s Reply at 8.

In Connecticut, "the measure of damages in an unjust enrichment case ordinarily is not the loss to the plaintiff but the benefit to the defendant."  Schirmer, 126 Conn. App. at 771.  The plaintiff bears the burden of proving the defendant was unjustly enriched, including a "reasonable approximation" of the benefit that the defendant

18

received.  Id. at 773.  The court agrees with Webster Bank that the plaintiffs have failed

to come forward with any evidence of a benefit to Webster Bank, much less a

"reasonable approximation" of that benefit.  Although it is conceivable that a bank could

derive a benefit from funds in a deposit account, the plaintiffs have provided no

evidence that Webster Bank actually realized a benefit of any kind.  "[M]ere assertions

and conclusions of the party opposing summary judgment are not enough to defend a

well-pleaded motion."  Mercer v. Brunt, 299 F. Supp. 2d 21, 26 (D. Conn. 2004).  As

Webster Bank points out, the plaintiffs could have served interrogatories or requests for

admission on Webster Bank or deposed employees of Webster Bank during discovery

in order to attain such evidence, if it exists, but they failed to do so.  See Def.'s Reply at

8.

        In addition, given the court's conclusion above that Webster Bank was within its

contractual rights to place the 45-day hold on the account, even if Webster Bank had

derived a benefit from the funds in the account, that benefit would not have been unjust.

The Connecticut Supreme Court has expressly held that, if an enforceable contract

permits the defendant to take the action in question, the plaintiff cannot recover in unjust

enrichment.  New Hartford v. Conn. Res. Recovery Auth., 291 Conn. 433, 455 (2009)

(discussing Meaney v. Connecticut Hospital Association, Inc., 250 Conn. 500, 517

(1999).  The only action that the plaintiffs have alleged was unjust is the 45-day hold.

The plaintiffs have, therefore, failed to create a genuine dispute of material fact with

respect to whether, if Webster Bank was enriched, that enrichment was unjust.

        In the absence of evidence that Webster Bank derived a benefit from the 45-day

hold on the account or that such a benefit would have been unjust, the court concludes

that Webster Bank is entitled to summary judgment on the unjust enrichment claim.

C.    Damages

The court has already concluded that summary judgment is proper on both the breach of contract claim and the unjust enrichment claim because the Deposit Account Disclosures were incorporated by reference in the written contract between the parties and expressly permitted Webster Bank to place a hold or freeze on deposit accounts. However, in the alternative, the court further concludes that the Deposit Account Disclosures bar the relief sought here, namely consequential damages.  The Deposit Account Disclosures provide as follows with respect to liability:

> Limits of Liability.  UNLESS EXPRESSLY PROHIBITED OR OTHERWISE RESTRICTED BY APPLICABLE LAW, OR UNLESS OTHERWISE PROVIDED IN THIS AGREEMENT, OUR LIABILITY IS LIMITED AS FOLLOWS:
>
> . . . .  IF A COURT FINDS THAT WE ARE LIABLE TO YOU BECAUSE OF OUR ACTS OR OMISSIONS IN CONNECTION WITH THIS AGREEMENT, YOU MAY RECOVER FROM US ONLY YOUR ACTUAL DAMAGES. IN NO EVENT WILL YOU BE ABLE TO RECOVER FROM US INDIRECT, INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR PUNITIVE DAMAGES OR LOST PROFITS, EVEN IF YOU ADVISE US OF THE POSSIBILITY OF SUCH DAMAGES.

Deposit Account Disclosures at 10–11.  There is no dispute that Webster Bank made all the funds available to the plaintiffs on September 15, 2011.  See Defendant's Statement at ¶ 23; Plaintiff's Statement at ¶ 23.  The damages claimed by the plaintiffs are not, therefore, actual damages but are instead consequential damages, based on alleged lost profits resulting from the 45-day hold.  See Ambrogio v. Beaver Road Assocs., 267 Conn. 148, 155 (2003) ("Traditionally, consequential damages include 'any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the

usual course of things, from such breach of contract itself.'" (quoting <u>West Haven Sound</u> <u>Development Corp. v. West Haven</u>, 201 Conn. 305, 319 (1986))); Compl. at ¶ 38 ("As a direct result of Webster's breaching its agreement with Lopes and American Trade . . . American Trade went out of business and Lopes suffered great financial loss as their services provider business and his reputation were ruined."); Exh. 14, Defendant's Statement (Doc. No. 33-14) (expert report of Ronald W. Filante, PhD., assessing damages in the form of lost profits).

The plaintiffs do not challenge the enforceability of this liability limitation provision, and the court knows of no reason why this provision would not be enforceable. <u>See</u> <u>City of Milford v. Coppola Constr. Co., Inc.</u>, 93 Conn. App. 704, 706 (2006) (discussing as enforceable a contractual waiver of consequential damages). In addition, the plaintiffs do not argue that the damages they seek are actual damages. The sole argument that the plaintiffs make with respect to the damages limitation in the Deposit Account Disclosures is "[t]here is a clear question of fact . . . as to whether the Deposit Account Disclosures [booklet] . . . was given to American." Pl.'s Mem. at 16.

In light of the court's conclusion that the Deposit Account Disclosures were incorporated by reference in written contract documents signed by the plaintiffs, <u>see</u> <u>supra</u> Section III(A), and given the rule in Connecticut that documents incorporated by reference need not be provided to a party in order to be binding, the court concludes that the plaintiffs' argument does not create a genuine dispute of material fact as to the damages liability. Therefore, summary judgment in favor of Webster Bank is proper on the basis that all the damages alleged by the plaintiffs are barred by the terms of the written contract between the parties.

**IV.** **CONCLUSION**

For the foregoing reasons, there are no genuine issues of material fact with respect to any of the plaintiffs' claims and Webster Bank is entitled to judgment as a matter of law on both counts. Therefore, Webster Bank's Motion for Summary Judgment (Doc. No. 32) is **GRANTED**, and the case is closed.

**SO ORDERED**.

Dated this 17th day of April 2018 at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge